PA Fair Elections, Heather Honey,   :
and Stacey Redfield,   :
                Petitioners   :
  :
            v.   :
  :
Pennsylvania Department of State,   :
Secretary of the Commonwealth Al   :
Schmidt, Northampton County,   :
Northampton County Election   :
Commission Board, Northampton   :
County Executive Lamont McClure,   :
and Northampton County Registrar   :
Christopher Commini (Office of   :
General Counsel),   :   No. 372 C.D. 2024
            Respondents   :   Argued: February 5, 2025


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE LORI A. DUMAS, Judge
           HONORABLE STACY WALLACE, Judge
           HONORABLE MATTHEW S. WOLF, Judge


OPINION BY
JUDGE COVEY                         FILED: May 28, 2025


      PA Fair Elections, Heather Honey (Honey),[1] and Stacey Redfield (Redfield)[2] (collectively, Petitioners) petition this Court for review of the Commonwealth of Pennsylvania (Commonwealth), Governor's Office of General

---

[1] Honey is a member and authorized representative of PA Fair Elections. *See* Reproduced Record (R.R.) at 198a.

[2] Redfield was an appointed judge of elections for the 148th district in Northampton County for the 2023 Municipal Election. *See* R.R. at 221a.

Counsel's (OGC) February 20, 2024 Final Determination dismissing Petitioners' Complaint filed pursuant to Title III of the Help America Vote Act of 2002 (HAVA).[3] There are two issues before this Court: (1) whether the OGC's dismissal of Petitioners' HAVA Complaint was correct as a matter of law and supported by substantial evidence; and (2) whether there is any basis to decertify an electronic voting system (EVS) in Pennsylvania through the HAVA complaint process established by Section 1206.2 of the Pennsylvania Election Code (Election Code).[4] After review, this Court affirms.

In the 2023 Municipal Election, Northampton County used the ExpressVote XL, a hybrid paper-based polling place device manufactured by Election Systems & Software (ES&S).[5] The ExpressVote XL is a hardware component of the EVS 6.3.0.0 (EVS 6300).[6] On January 13, 2023, the Pennsylvania Department of State (Department) tested and conditionally certified the EVS 6300 pursuant to Article XI-A of the Election Code.[7] The conditions to which certification is subject are set forth in Section IV of the Department's Certification Report. *See* Reproduced Record (R.R.) at 106a-118a.

The EVS 6300 with the ExpressVote XL used in Northampton County works as follows: (a) the voter inserts a blank paper card into a slot; (b) the voter makes selections by touching a screen, and the selections turn green; (c) when the

---

[3] 52 U.S.C. §§ 21081-21085, 21101-21102.

[4] Act of June 3, 1937, P.L. 1333, *as amended*, added by Section 11 of the Act of December 9, 2002, P.L. 1246, 25 P.S. § 3046.2.

[5] ES&S is a private company. It is one of Northampton County's vendors, but it is not a state or municipal election administrator.

[6] Throughout their brief, Petitioners focus on the ExpressVote XL component of the EVS 6300, while Respondents focus on the EVS 6300 as a whole. Because the ExpressVote XL is a part of the EVS 6300 that was used in the Northampton County 2023 Municipal Election, decertification of one would also decertify the other; thus, this Court will not address them separately.

[7] Sections 1101-A to 1122-A of the Election Code, added by Section 4 of the Act of July 11, 1980, P.L. 600, 25 P.S. §§ 3031.1-3031.22.

voter has made all desired selections, he or she touches PRINT on the screen, and the selections are printed onto the blank paper card and displayed behind a clear window; (d) if the voter wishes to make changes, he or she hits QUIT VOTING, which will erase the ballot and start the voting process over; and (e) if the voter is satisfied with the selections, he or she hits CAST to submit both the electronic record and the paper printed ballot. *See* R.R. at 69a-70a.

When programming Northampton County's EVS 6300 voting machines for the 2023 Municipal Election, ES&S erred by inverting the names of two Pennsylvania Superior Court (Superior Court) Judges standing for retention on the printed paper record. That clerical labelling error did not affect the proper recording of the voter's intended selection in the EVS 6300's system. Before the 2023 Municipal Election, Northampton County conducted logic and accuracy (L&A) testing of its voting machines, which did not reveal the problem with the Superior Court retention races. On the morning of the 2023 Municipal Election, this problem was brought to the attention of a Northampton County Common Pleas Court Judge, who ordered voters to be instructed to use the EVS 6300 machines with the error and that the paper receipt will record their Superior Court retention selection by correctly revealing "one candidate to the other candidate." OGC Final Determination at 6 (Finding of Fact (FOF) 12). Throughout the day, other common pleas court judges issued slightly different orders, including instructing voters that they should ask for help if their paper printout did not match their intended vote. The instructions in these orders were not always clear and consistent, which caused confusion for voters throughout the day.

On November 22, 2023, Petitioners filed with the Department a Complaint against the Department and Al Schmidt, Secretary of the Commonwealth (Secretary), Northampton County, the Northampton County Election Commission Board, Northampton County Executive Lamont McClure, and Northampton County

3

Registrar Christopher Commini (Registrar Commini) (collectively, Respondents), and ES&S[8] under Section 1206.2 of the Election Code. In the Complaint, Petitioners alleged that Respondents violated Title III of HAVA. In accordance with Section 1206.2(c)(1) of the Election Code, 25 P.S. § 3046.2(c)(1), the Department forwarded the Complaint to the OGC on or about November 28, 2023. Respondents filed written responses pursuant to Section 1206.2(c)(2) of the Election Code, 25 P.S. § 3046.2(c)(2).

Petitioners requested an informal hearing, which a complainant is entitled to under Section 1206.2(c)(3) of the Election Code, 25 P.S. § 3046.2(c)(3). In compliance with a prehearing scheduling order, the parties each filed prehearing memoranda, along with witness and exhibit lists, on February 2, 2024. A Deputy General Counsel conducted a hearing on February 6, 2024. The parties were also permitted to file post-hearing memoranda, which they did on February 9, 2024. On February 20, 2024, the OGC issued the Final Determination dismissing the Complaint because Petitioners did not establish a HAVA violation. Petitioners appealed to this Court.[9]

Preliminarily, Respondents assert that the Election Code does not authorize the OGC or this Court to decertify a voting system pursuant to the HAVA

---

[8] The OGC determined that ES&S was not a proper Respondent to a HAVA Title III action using the procedures established by the Election Code, *see* 25 P.S. § 3046.2. *See* OGC Final Determination at 7 (FOF 9).

[9] Appellate review of agency decisions "is restricted to determining whether there has been a constitutional violation, an error of law, or a violation of agency procedure, and whether necessary findings of fact are supported by substantial evidence." *Dep't of Lab*[.] *& Indus. v. Workers' Comp. Appeal Bd. (Crawford & Co.)*, . . . 23 A.3d 511, 514 ([Pa.] 2011).

*Shrom v. Pa. Underground Storage Tank Indemnification Bd.*, 292 A.3d 894, 907 (Pa. 2023). "When considering pure questions of law, our standard of review is *de novo* and our scope of review is plenary." *Velasquez v. Miranda*, 321 A.3d 876, 891 (Pa. 2024).

This Court has reordered the issues presented for ease of discussion.

4

Title III administrative complaint process contemplated by Section 1206.2 of the Election Code. Rather, Respondents maintain that the Election Code charges the Secretary with the duty to "examine and reexamine voting machines, and to approve or disapprove them for use" in the Commonwealth. Section 201(b) of the Election Code, 25 P.S. § 2621(b); *see also* Section 1105-A(b) of the Election Code, 25 P.S. § 3031.5(b). And, Respondents add, in turn, each county board of elections is entitled to select the type of system of its choice for use within its county. *See* Section 302(c) of the Election Code, 25 P.S. § 2642(c).

Respondents proclaim that voting system decertification is wholly within the Secretary's authority. Respondents emphasize that although the Election Code contains a procedure under which any 10 registered voters may request that the Department reexamine any previously-certified voting system, *see* Section 1105-A(a) of the Election Code, 25 P.S. § 3031.5(a), even in such a proceeding, great deference is accorded to the Secretary – the person to whom the General Assembly has specifically delegated the authority to determine whether an EVS has adequate security measures against tampering.

Respondents declare that Petitioners have provided no evidence of any such tampering, but even more, Petitioners have failed to avail themselves of the appropriate vehicle to challenge their EVS concerns. Respondents maintain that the OGC must deny Petitioners' attempt to do an end-run around the Election Code's EVS process by filing a HAVA Title III complaint. Respondents insist that based on Petitioners' reasoning, all of the detailed prescriptions for the Secretary's testing and approval of EVSs, and the counties' powers to select and purchase them, are subject to collateral attack through HAVA's Title III complaint process.

Petitioners rejoin that HAVA's Title III administrative complaint process requirements only provide that if a state determines there is a violation, "the [s]tate shall provide the appropriate remedy [(i.e., remedial plan)]." Section

5

402(a)(2)(F) of HAVA, 52 U.S.C. § 21112(a)(2)(F).  Petitioners assert that, as the codified version of Pennsylvania's HAVA administrative procedure states, the OGC shall issue a final determination and remedial plan if necessary.  Petitioners contend that, ultimately, whatever relief is possible through a HAVA Title III administrative complaint is based on (1) a determination that a HAVA violation has occurred, is occurring, or will occur, and (2) a remedial plan.  Petitioners claim that the full scope of the OGC's authority in a remedial plan (for example, whether it could require voting system or component decertification) is not before this Court, because the OGC did not issue that remedial plan.

Section 402(a) of HAVA provides, in relevant part:

**Establishment of [s]tate-based administrative complaint procedures to remedy grievances**

**(1) Establishment of procedures as condition of receiving funds**

If a [s]tate receives any payment under a program under this chapter, the [s]tate shall be required to establish and maintain [s]tate-based administrative complaint procedures which meet the requirements of paragraph (2).

**(2) Requirements for procedures**

The requirements of this paragraph are as follows:

**(A)** The procedures shall be uniform and nondiscriminatory.

**(B)** Under the procedures, any person who believes that there is a violation of any provision of [Title III of HAVA] (including a violation which has occurred, is occurring, or is about to occur) may file a complaint.

**(C)** Any complaint filed under the procedures shall be in writing and notarized, and signed and sworn by the person filing the complaint.

**(D)** The [s]tate may consolidate complaints filed under subparagraph (B).

**(E)** At the request of the complainant, there shall be a hearing on the record.

**(F) If**, under the procedures, **the [s]tate determines that there is a violation of any provision of [Title] III [of HAVA], the [s]tate shall provide the appropriate remedy**.

**(G)** If, under the procedures, the [s]tate determines that there is no violation, the [s]tate shall dismiss the complaint and publish the results of the procedures.

52 U.S.C. § 21112(a) (text emphasis added).

Section 201 of the Election Code instructs:

The Secretary . . . shall exercise in the manner provided by [the Election Code] all powers granted to him by [the Election Code], and shall perform all the duties imposed upon him by [the Election Code], which shall include the following:

. . . .

(b) To examine and reexamine voting machines, and to approve or disapprove them for use in this state, in accordance with the provisions of [the Election Code]. **The [S]ecretary shall not approve any voting machine for any election**, federal or state, **in this Commonwealth, that does not comply with the requirements of [S]ection 301 of [HAVA]**.

25 P.S. § 2621 (emphasis added).

Section 1105-A(b) of the Election Code states:

Any person or corporation owning, manufacturing[,] or selling, or being interested in the manufacture or sale of, any [EVS], may request the Secretary . . . to examine such system if the voting system has been examined and approved by a federally recognized independent testing authority and if it meets any voting system performance and test standards established by the [f]ederal [g]overnment. The costs of the examination shall be paid by the person requesting the examination in an amount set by the Secretary . . . . **Any [10] or more persons, being qualified registered electors of this Commonwealth, may, at any time, request the Secretary . . . to reexamine any [EVS] theretofore examined and**

7

> **approved by him**. Before any reexamination, the person, persons, or corporation, requesting such reexamination, shall pay to the Treasurer of the Commonwealth a reexamination fee of four hundred fifty dollars ($450[.00]). The Secretary . . . may, at any time, in his discretion, reexamine any such system therefore examined and approved by him. The Secretary . . . may issue directives or instructions for implementation of electronic voting procedures and for the operation of [EVSs].

25 P.S. § 3031.5(b) (emphasis added).

Here, Petitioners were not seeking to have the Secretary reexamine an EVS. Rather, Petitioners were seeking to have the OGC determine that Northampton County's use of a specific EVS violated or will violate HAVA, which is the exact purpose of HAVA's Title III complaint procedure. If the OGC determined that a violation occurred or will occur, it would have been within the OGC's province to determine the appropriate remedy. Accordingly, Petitioners used the correct procedure for determining whether Northampton County's use of a specific EVS violated or will violate HAVA.

Petitioners argue that the OGC committed errors of fact and misinterpreted the law by failing to find the continued use of the ExpressVote XL, which is demonstrably untrustworthy to satisfy HAVA's "[m]anual audit capacity" requirement, has violated or will violate HAVA. Section 301(a)(2) of HAVA, 52 U.S.C. § 21081(a)(2). Petitioners assert that because there was an issue with the ExpressVote XL in Northampton County's 2023 Municipal Election, which caused it to print a mismatch between voter selections and the paper record, its use in a federal election will violate HAVA, and it should be decertified. Petitioners contend that using the same voting system that previously failed to produce a permanent paper record with a manual audit capacity in a municipal election may threaten future federal elections.

8

Respondents rejoin that HAVA establishes certain requirements for EVSs, i.e., such systems must provide for "private and independent" verification of a voter's selection, and an opportunity to change or correct any errors before casting, as well as a "permanent paper record" to be used in audits or recounts. 52 U.S.C. § 21081(a)(1)(A)(i), (ii), (2)(A), (B)(i), (ii). Respondents further retort that HAVA also established the United States Election Assistance Commission (EAC), which is charged with accrediting testing laboratories to certify voting systems for use in federal elections. *See* Sections 201 and 231 of HAVA, 52 U.S.C. §§ 20921, 20971. Respondents assert that the Election Code charges the Secretary with the duty to examine an EVS's compliance with federal and other standards. Respondents claim that the ExpressVote XL has repeatedly been held to meet the EAC's standards and has been certified for use in Pennsylvania.

Respondents declare that this extensive testing makes clear that the ExpressVote XL complies with HAVA requirements. Respondents insist that the clerical labelling error that occurred in connection with the two judicial retention races in Northampton County in the 2023 Municipal Election does nothing to undermine the certification of this voting system. Respondents emphasize that the error had nothing to do with the functioning of the voting system, which performed consistent with all federally mandated requirements. Respondents maintain that Petitioners provided no evidence that any votes were improperly recorded. Respondents point out that the Secretary has already directed, and Northampton County has already implemented, more L&A testing, which will prevent any similar errors from occurring in the future.

Section 301 of HAVA states, in relevant part:

**(2) Audit capacity**
**(A) In general**

9

The voting system shall produce a record with an audit capacity for such system.

**(B) Manual audit capacity**

**(i)** The voting system shall produce a permanent paper record with *a manual audit capacity* for such system.

**(ii)** The voting system shall provide the voter with an opportunity to change the ballot or correct any error before the permanent paper record is produced.

**(iii)** *The paper record* produced under subparagraph (A) *shall be available as an official record for any recount conducted* with respect to any election in which the system is used.

**(3) Accessibility for individuals with disabilities**

The voting system shall--

**(A)** be accessible for individuals with disabilities, including nonvisual accessibility for the blind and visually impaired, in a manner that provides the same opportunity for access and participation (including privacy and independence) as for other voters[.]

52 U.S.C. § 21081 (italic emphasis added).

Section 301(a)(1)(A) of HAVA expressly provides that acceptable voting systems include a "direct recording electronic system [(DRE)]." 52 U.S.C. § 21081(a)(1)(A). The EAC's Voluntary Voting System Guidelines (VVSG)[10] describes a "DRE" as

---

[10] The VVSG

> are a set of specifications and requirements against which voting systems can be tested to determine if they meet required standards. Some factors examined under these tests include basic functionality, accessibility, and security capabilities. While [HAVA] mandates the EAC to develop and maintain these requirements, adhering to the VVSG is voluntary except in select states where it is required by their own state law.

https://www.eac.gov/voting-equipment/voluntary-voting-system-guidelines (last visited May 27, 2025).

> [a] voting system [that] records votes by means of a ballot display provided with mechanical or electrooptical components that can be activated by the voter; that processes data by means of a computer program; and that records voting data and ballot images in memory components. **It produces a tabulation of the voting data stored in a removable memory component and as** [a] **printed copy**. The system may also provide a means for transmitting individual ballots or vote totals to a central location for consolidating and reporting results from precincts at the central location.

*See* Certified Record, Volume 6, at 73 (emphasis added).[11] Consequently, because HAVA expressly allows DRE voting systems, and because DRE voting systems, by definition, store and count votes electronically and produce printed copies of those votes for auditing and verification purposes, HAVA does not bar the use of the EVS 6300.

Here, the OGC found as a fact that "[f]or the EVS 6300 voting machines used by Northampton County for the 2023 [Municipal] Election, there was an error 'during the programming of the election by the voting system manufacturer.'" OGC Final Determination at 4 (FOF 9) (quoting Registrar Commini's Declaration ¶ 7). The OGC further determined that this error inverted the names of two Superior Court Judges standing for retention on the printed paper record, but it did not affect the proper recording of the voter's intended selection in the computer's system. *See* OGC Final Determination at 4 (FOF 10); *see also* Registrar Commini's Declaration ¶¶ 8-9. These findings of fact are supported by substantial evidence.[12]

---

[11] Because the Certified Record's pages are not numbered, the page numbers referenced herein reflect electronic pagination. The VVSG is not contained in the Reproduced Record.

[12] "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gibraltar Rock, Inc. v. Pa. Dep't of Env't Prot.*, 316 A.3d 668, 679 n.9 (Pa. Cmwlth. 2024) (quoting *Dep't of Env't Res. v. Borough of Carlisle*, 330 A.2d 293, 298 (Pa. Cmwlth. 1974)). This Court's careful review of the entire record in this case

Because the clerical labelling error that occurred in connection with the two judicial retention races in Northampton County in the 2023 Municipal Election did nothing to undermine the certification of the voting system, the error had nothing to do with its functioning (which was consistent with all federally mandated requirements), and Petitioners provided no evidence that any votes were improperly recorded, Petitioners did not meet their burden of proving a HAVA violation. Accordingly, the OGC did not err by dismissing Petitioners' Complaint for failing to prove a HAVA violation.

For all of the above reasons, the OGC's Final Determination is affirmed.

_____
ANNE E. COVEY, Judge

---

supports this Court's conclusion that the OGC's findings of fact are amply supported by substantial evidence.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PA Fair Elections, Heather Honey,     :
and Stacey Redfield,                       :
                 Petitioners         :
                                 :
              v.                     :
                                 :
Pennsylvania Department of State,    :
Secretary of the Commonwealth Al   :
Schmidt, Northampton County,      :
Northampton County Election       :
Commission Board, Northampton     :
County Executive Lamont McClure,   :
and Northampton County Registrar    :
Christopher Commini (Office of      :
General Counsel),                :   No. 372 C.D. 2024
              Respondents      :

## O R D E R

AND NOW, this 28th day of May, 2025, the Commonwealth of Pennsylvania, Governor's Office of General Counsel's February 20, 2024 Final Determination is affirmed.

_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PA Fair Elections, Heather Honey,     :
and Stacey Redfield,     :
           Petitioners     :
    :
    v.     :    No. 372 C.D. 2024
    :
Pennsylvania Department of State,     :    Argued: February 5, 2025
Secretary of the Commonwealth Al     :
Schmidt, Northampton County,     :
Northampton County Election     :
Commission Board, Northampton     :
County Executive Lamont McClure,     :
and Northampton County Registrar     :
Christopher Commini     :
(Office of General Counsel),     :
           Respondents     :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE STACY WALLACE, Judge
                HONORABLE MATTHEW S. WOLF, Judge

CONCURRING OPINION
BY JUDGE McCULLOUGH               FILED: May 28, 2025

I agree with the Majority that the Office of General Counsel (OGC) properly dismissed Petitioners' claims alleging violations of Title III of the Help America Vote Act of 2002 (HAVA).[1] However, as noted below, I depart somewhat from the Majority's rationale as to why Petitioners' claims properly were dismissed and do not merit relief in this instance. Given that departure, I can only concur in the result.

---

[1] 52 U.S.C. §§ 21081-21085, 21101-21102.

Petitioners correctly allege that the ExpressVote XL hardware component of the EVS 6300 electronic voting device malfunctioned in the Northampton County 2023 Municipal Election when, due to a human programming error, it inverted the names of two Pennsylvania Superior Court retention candidates on the printed paper vote records of some voters. Because the paper records of those votes undisputedly were incorrect, the Northampton County Court of Common Pleas issued interim remedial relief on the day of the election. Further, because appropriate pre-election logic and accuracy (L&A) testing did not occur and would and should have caught the error, additional and better testing was implemented after the election to ensure that such problems did not occur in the future. *See* Department of State and Secretary Br. at 25-26; Reproduced Record at 341a, 362a-63a.

Petitioners, however, broadly allege that the ExpressVote XL, because it records votes electronically and produces paper vote records from those electronically stored votes, is demonstrably unreliable and *capable* of producing an erroneous paper vote record in the future. Petitioners accordingly argue that the ExpressVote XL is incapable of satisfying HAVA's requirement that voting systems produce accurate paper vote records for use in a manual audit. *See* Section 301(a)(2) of HAVA, 52 U.S.C. § 21081(a)(2). Petitioners seek declaratory and injunctive relief precluding further use of the ExpressVote XL.

I agree that Petitioners' claim is cognizable under Title III of HAVA to the extent that it alleges either (1) an actual violation of Section 301(a) of HAVA in the 2023 Municipal Election in Northampton County; or (2) a potential violation of Section 301(a) in future elections because of a problem inherent in the ExpressVote XL's design. An actual violation of Section 301(a) did occur here because, certainly, the failure of a voting system to produce accurate paper vote records, now or in the

PAM - 2

future, is a valid claim under HAVA and the proper subject of a HAVA complaint seeking appropriate remedial relief. Inaccurate paper vote records were produced by the ExpressVote XL in the 2023 Municipal Election, which is in direct contravention of the requirement in Section 301(a)(2) that voting systems produce accurate paper vote records that can be used in a manual audit. Petitioners' claim in this respect therefore is valid.

Nevertheless, I also conclude that Petitioners' claims properly were dismissed for two reasons. First, remedial relief was issued during and after the 2023 Municipal Election to address the inaccuracies in the paper vote records, which undisputedly were caused by a human programming error. That relief was designed to correct the inaccuracies and prevent their occurrence in the future, and Petitioners do not seek any further remedial relief specifically regarding the 2023 Municipal Election. *See* Section 402(a)(2)(F) of HAVA, 52 U.S.C. § 21112(a)(2)(F), and Section 1206.2(b) of the Pennsylvania Election Code (Election Code),[2] 25 P.S. § 3046.2(b). Second, Petitioners have not alleged any manufacturing or programming defects inherent in the ExpressVote XL that did or would tend to cause paper vote record errors in the future. Thus, because the errors identified by Petitioners were adequately remedied during and after the 2023 Municipal Election, the OGC properly dismissed their HAVA complaint.

Lastly, I note that, to the extent Petitioners' claims could be construed to seek broader relief in the form of the decertification of all ExpressVote XL and/or EVS 6300 voting systems based on the inherent qualities of direct recording electronic voting systems, such a claim is not appropriate for a HAVA complaint. As the Majority notes, HAVA expressly contemplates the valid use of direct

---

[2] Act of June 3, 1937, P.L. 1333, *as amended*, added by the Act of December 9, 2002, P.L. 1246, 25 P.S. § 25 P.S. § 3046.2.

recording electronic voting systems. *See* 52 U.S.C. § 21081(a)(1)(A). Petitioners' claims in this regard therefore would have to be asserted in a reexamination petition filed with the Department of State pursuant to Section 1105-A(b) of the Election Code, added by the Act of July 11, 1980, P.L. 600, 25 P.S. § 3031.5(b).

For these reasons, and although I concur with the Majority's ultimate disposition of Petitioners' appeal, I concur only in the result.


_____
PATRICIA A. McCULLOUGH, Judge